UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BROOKWOOD, LLC                                              CIVIL ACTION

VERSUS                                                      NO. 08-4793

SCOTTSDALE INSURANCE COMPANY                                SECTION "N" (1)

# O R D E R  and  R E A S O N S

Before the Court is the **Motion for Summary Judgment (Rec. Doc. 12)**, filed by Defendant Scottsdale Insurance Company ("Scottsdale" or "Defendant"). The motion is opposed by Plaintiff Brookwood, LLC ("Brookwood" or "Plaintiff"). After reviewing the memoranda, the exhibits, the complaint, and the applicable law, the motion is denied as stated herein.

## I. BACKGROUND

The instant diversity action arises out of a claim Brookwood made on its property insurance policy issued by Scottsdale. Brookwood owns a shopping center in Baker, Louisiana, where an unoccupied retail unit was burgled some time between November 26 and December 6, 2007. The perpetrators apparently forced their way through a locked rear door to the unit (previously rented by a Winn-Dixie grocery store) and stole copper wire and other electrical equipment. The same unit has previously been burgled in 2006, and it is alleged that the unit's burglary alarm system was rendered inoperable at that time and was never repaired.

Scottsdale declined to pay for the 2007 claim on grounds that Brookwood's loss was

excluded under the policy because of Plaintiff's failure to maintain a centrally-monitored burglar alarm system at the unit and, alternatively, because Plaintiff made a material representation on its insurance application regarding whether the shopping center was protected by a centrally monitored burglar alarm. Brookwood argues that the contract provision Scottsdale relies on is ambiguous and that it did not make a material misrepresentation on its application. It further argues that Scottsdale has waived enforcement of its exclusion by continuing to accept premiums after being put on notice that there was not a functioning alarm system in the unit.

## II. ANALYSIS

**A. Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings

and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by

creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Are the Relevant Provisions Ambiguous?**

An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *Carbon v. Allstate Ins. Co.*, 719 So.2d 437, 439 (La. 1998); *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994). Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the Court. *See Texas Eastern Transmission Corp. v. Amerada Hess*, 145 F.3d 737, 741 (5th Cir. 1998). Words in an insurance contract are to be given their ordinary, generally prevailing meaning, unless they have acquired technical meaning. *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 193 (La. 2008). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046. In addition, a contract provision is not ambiguous merely because one party can create a dispute in hindsight, *see Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996); *Rutgers, State Univ. v. Martin Woodlands Gas Co.*, 974 F.2d 659, 662 (5th Cir. 1992), and a court may not create an ambiguity where none exists. *See Slocum-Stevens Ins. Agency v. Int'l Risk Consultants, Inc.*, 666 So.2d 352, 357 (La. App. 1995). When the contract is not ambiguous, a court has no authority to reach beyond the four

corners of the document. *See Huggs, Inc. v. LPC Energy, Inc*., 889 F.2d 649, 653 (5th Cir. 1989).

The instant insurance contract was issued subject to a "Burglary and Robbery Protective Safeguards Endorsement" that added the following condition to the insurance contract:

> **A. BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**
> 1. As a condition of this insurance, you are required to maintain the protective devices and/or services listed in the Schedule above.
> 2. The protective safeguard(s) to which this endorsement applies are identified by the following symbols:
>    a. "BR-1" Automatic Burglary Alarm, protecting the entire building, that signals to:
>       (1) An outside central station, or
>       (2) A police station.

Mot. at Ex. D (Policy, Form CP 12 11 10 00). Additionally, the endorsement added the following exclusion:

> **B. BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**
> We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:
> 1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
> 2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

*Id.* Brookwood argues that these provisions are ambiguous, on grounds that the word "maintain" does not imply that "the insured was required to install burglar alarms at all locations where they did not exist." Opp. at 4 (Rec. Doc. 32) (emphasis in original).

Brookwood's proposed interpretation ignores the clear import of the verb "maintain," which is that the insured is required to have a functioning, operational burglar alarm system that protects the entire building and connects to a centrally monitored station, and to keep that system

5

operational through the life of the contract of insurance.[1] This provision has three consequences. First, if such a system has been installed and is operative at the time the contract comes into effect, it must be kept operational through the life of the contract. Second, if such a system has *not* been installed by the time the contract becomes effective, it must be installed and kept operational through the life of the contract. Third, if such a system has been installed but is not operational at the time the contract comes into effect, it must be made operational. None of these are absurd consequences and the Court finds that there is no ambiguity in this condition.[2] Nor is there any ambiguity in the exclusion cited above. The exclusion is clear: if, prior to a theft, the insured knew that the building's burglar alarm system had failed to function or was impaired, the loss resulting from such theft is excluded.

In fact, it is Brookwood's proposed interpretation of the cited provisions that leads to absurd consequences. Under Brookwood's interpretation, Scottsdale has written an insurance contract that includes a condition that the insured must maintain an existing, operational burglar alarm at the building, and that failure to do so shall preclude coverage for loss by theft. Yet Brookwood argues that the provision should be interpreted such that if the building has no

---

[1] This interpretation comports with a common, generally prevailing definition of the word "maintain," which is to "keep in a condition of good repair or efficiency." *See* American Heritage Dictionary of the English Language (4th ed. 2009).

[2] In fact, though the Court finds that this provision is clear on its face and thus need not consider parol evidence to determine its meaning, it becomes even more unambiguous when one considers that Scottsdale likely did not include an explicit requirement that Brookwood "install" a burglar alarm system because the insured had already reported on its application that the building had such a system. *See* Mot. at Ex. D (noting "CENTRAL STATION" burglar alarm type and further noting "Burglar Alarm Installed And Serviced By: ADT") (Brookwood Insurance Application, p. 6).

existing alarm or has an alarm presently installed that is not operational, the insured is released from any responsibility to install an alarm or repair or reinstate the existing system. If taken to its logical conclusion, this interpretation renders the condition and exclusion moot, practically speaking, since it incentivizes insureds to avoid installing burglar alarms or to disconnect existing ones so as to evade the responsibility of maintaining the systems and thereby risking exclusion. Such a provision, interpreted as Brookwood suggests, would make it less likely that an insured would install burglar alarms and more likely that insureds would disconnect existing alarms prior to a contract of insurance taking effect, an absurd conclusion.

Having determined that the cited provisions are not ambiguous and that they require the insured building to be protected by a burglar alarm system "maintained" in operational status through the life of the contract, the Court further finds that no reasonable factfinder could find that Brookwood is other than in violation of this unambiguous condition and that its loss is excluded, failing waiver by Scottsdale. It makes no difference to the Court's determination whether no burglar alarm system had been installed when the policy was issued or whether a system was installed in the unit and rendered inoperable some time prior to the theft, as Brookwood has admitted. *See* Mot. at Ex. B ("Winn Dixie, the former tenant is believed to have had an alarm system. Any such system that existed was rendered inoperable as a result of the vandalism to the property that occurred in October or November, 2006") (Brookwood Answer to Interrogatory No. 1).[3] Brookwood has admitted that it failed to maintain an operational,

---

[3] In a later filing, Brookwood attempts to walk back this admission. *See* Reply at ¶4 (Rec. Doc. 33). Brookwood relies upon an inventory attached to the filing as Exhibit A. This inventory appears to be a marketing brochure for potential commercial occupants of the building an includes a survey of the property. The Court is at a loss to understand how this exhibit supports

centrally-monitored burglar alarm system during the life of the contract and also failed to report the impairment of such a system to Scottsdale, as required by the exclusionary provision. Accordingly, failing waiver of the exclusion, Brookwood's loss is excluded.

**C. Is the Exclusion Waived?**

The Louisiana Supreme Court has enumerated the elements of waiver: (1) an existing legal right; (2) knowledge of the existence of that right; and (3) either (a) an actual intention to relinquish the right, or (b) conduct so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished. *Arceneaux v. Amstar Corp.*, 969 So.2d 755, 767 (La. App. 2007) (citing *Steptore v. Masco Constr. Co.*, 643 So.2d 1213, 1216 (La. 1994). *See also Arceneaux v. Amstar Corp.*, 921 So.2d 189, 192 (La. App. 2005). Waiver is "'the intentional relinquishment of a known power or privilege.'" *The Home Insurance Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993) (quoting *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1373 (La. 1987)). Under Louisiana law, the acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privilege. *See Swain v. Life Ins. Co. of La.*, 537 So.2d 1297, 1300 (La. 1989). "[R]eliable proof of such knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations, generally falls on the party who demands performance." *Arceneaux*, 969 So.2d at 765 (citations and quotations

---

Brookwood's assertion that "based on the Winn Dixie inventory attached hereto . . . Winn Dixie did not have a burglar alarm system in the unit." *Id.* Even if it did, the proposed fact is irrelevant in light of the Court's ruling that the contract condition unambiguously requires that if such a system has not been installed by the time the contract becomes effective, it must be installed and kept operational through the life of the contract. *See supra* at 6.

omitted).

Brookwood argues that Scottsdale waived its exclusion defense by accepting premiums and continuing coverage after becoming aware that the building lacked a functioning burglar alarm system. In support, Brookwood points to a report generated for Scottsdale after a July 21, 2007 inspection of the property, just subsequent to the policy taking effect. This report notes, in several places, that there was either no burglar alarm system or only a "local"—i.e., not centrally-monitored—system in the building. *See* Opp. At Ex. D (Inspection report at SIC00311, SIC00315). Scottsdale replies that these pages of the report are not conclusive of the fact that it knew that there was not a functioning alarm system in the building, since its underwriter relied upon Brookwood's statement in its application that the building had a monitored alarm. *See* Mot. at Ex. D (noting "CENTRAL STATION" burglar alarm type and further noting "Burglar Alarm Installed And Serviced By: ADT") (Brookwood Insurance Application, p. 6). Scottsdale also argues that even if the report could be seen as proof that it had knowledge of Brookwood's non-compliance with the condition, it did not accept any premium payments after the date upon which it received the report, and thus it has not waived the exclusion within the meaning of *Swain*.[4]

---

[4] Scottsdale also makes an extensive argument to the effect that waiver cannot apply to a condition precedent to coverage such as this one, but only to an exclusion. Even if this were the case, it is arguable that what has been waived here is not the condition precedent, but the exclusion. Regardless, however, the Louisiana Supreme Court has clarified that "[a]ny policy provision can be waived" and has "concluded that 'the best view is that waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered.'" *Arceneaux*, 969 So.2d at 765 (quoting *Tate*, 508 So.2d at 1375).

The Court concludes that there is a genuine issue of material fact as to whether Scottsdale has waived its exclusion defense. A reasonable factfinder could find that, having received the report showing that there was not a functioning, centrally-monitored burglar alarm at the site, Scottsdale waived its exclusion by failing to cancel coverage, adjust the policy premium, or demand that Brookwood come into compliance. Further, even if it is true that the policy premiums were paid prior to the July 21, 2007 inspection, it is not merely acceptance of a premium, but also continuation of coverage, that can constitute waiver of an exclusion defense. *Arceneaux*, 921 So.2d at 192 (citing *Steptore v. Masco Constr. Co.*, 643 So.2d 1213, 1216 (La. 1994)). Scottsdale's underwriter admitted in her deposition that Brookwood's coverage was extended subject to a satisfactory inspection. *See* Opp. at Ex. F (Landrigan deposition, pp. 38-39). A reasonable factfinder could find that continuation of that coverage after receiving a report that suggests that there is no centrally-monitored burglar alarm system in operation at the site waived the exclusion defense.[5]

### III. CONCLUSION

Considering the foregoing, the motion is **DENIED** because the Court finds that there is a

---

[5] Because the Court concludes that there is a genuine material fact issue as to whether Scottsdale waived its exclusion defense, the Court also concludes that there is a genuine issue of material fact as to whether Scottsdale waived its defense of material misrepresentation. When an insurer is on notice that a misrepresentation may have been made by an insured, the insured may waive its defense of misrepresentation by failure to act upon or inquire into that information. *See Union National Bank v. Manhattan Life Insurance Co.*, 26 So. 800 (La. 1899); *Bordelon v. National Life & Acc. Ins. Co.*, 187 So. 112 (La. App. 1939). *See also Adamson v. Home Life Ins. Co.*, 508 F.2d 766, 768 (5th Cir. 1975) (applying Texas law). Assuming that Brookwood did in fact make a material representation, if Scottsdale was on notice after the July 21, 2007 inspection that Brookwood was in non-compliance with the alarm system condition, it was on notice at the same time that Brookwood made a material misrepresentation about having a centrally-monitored alarm at the site—or so a reasonable factfinder could find.

genuine issue of material fact as to whether Scottsdale waived its defense of exclusion.

New Orleans, Louisiana, this 17th day of August, 2009.

**KURT D. ENGELHARDT**
**United States District Judge**